277 So.2d 757 (1973)
Mrs. Rosemary BOUTTE
v.
Mr. and Mrs. Lawrence E. HARGROVE.
No. 5315.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1973.
Rehearings Denied June 5, 1973.
*758 Kronlage, Dittmann & Caswell, Robert M. Caswell, New Orleans, for plaintiff-appellant.
Garon, Brener & McNeely, Milton E. Brener, New Orleans, for defendants-appellants.
Before LEMMON, STOULIG and SCHOTT, JJ.
STOULIG, Judge.
This case involves appeals by all litigants from a judgment awarding plaintiff $9,000 damages as the victim of an assault and battery. Plaintiff, Mrs. Rosemary Boutte, sued Mr. and Mrs. Lawrence E. Hargrove, alleging both participated in battering her without provocation. Defendants' answer admits plaintiff received several blows in a fight with only Mrs. Hargrove but claims plaintiff started the fisticuffs, for no apparent reason, by hitting Mrs. Hargrove in the face. Defendants reconvenedMrs. Hargrove for damages for her alleged injuries, and Mr. Hargrove for community funds expended for medical treatment of his wife.
After a lengthy trial, the jury cast Mrs. Hargrove in judgment, awarding the plaintiff $6,000 compensatory damages and $3,000 exemplary damages. Defendants' appeal addresses itself to the alternative propositions that (1) the record fails to support the jury verdict on liability; or (2) if liability attaches, exemplary damages are unauthorized and the quantum for compensatory damages is excessive. Plaintiff seeks on appeal amendment of the *759 judgment to cast Mr. Hargrove solidarily with his wife and to increase the quantum.
What apparently precipitated this incident was a disagreement between plaintiff and Mrs. Hargrove's son, neighbors who had exchanged unpleasantries over the location of a fence. Mrs. Hargrove and plaintiff were virtual strangers to each other before the incident. On these facts all the litigants agree. But the respective versions of plaintiff and defendants as to the fight itself are in hopeless conflict. Thus, in fixing liability, the jury was required to determine who was telling the truth and obviously it accepted plaintiff's testimony, supported in all essential details by two independent witnesses. Mrs. Boutte's version was substantially as follows:
On April 11, 1968, at approximately 7:30 p. m., she was returning to her home from her job at New Orleans International Airport. She parked at the curb in front of her house, locked her car and had started toward her house when she saw a woman running toward her. Then, without warning, Mrs. Hargrove, at the time a complete stranger to plaintiff, began pounding and beating her about the face and head.
The beating continued for an indeterminate time with plaintiff attempting to ward off the blows and to ascertain the reason for Mrs. Hargrove's actions. Mrs. Boutte was pushed against her parked car at one point, and during the entire time Mrs. Hargrove was pounding her, plaintiff had her purse hanging by a strap from one arm and a paper bag containing slippers in her hand. Toward the end of the incident, Mr. Hargrove walked up to the women and held plaintiff's arms as his wife continued to beat her. He then told his wife to stop because plaintiff had had enough. From Mrs. Hargrove's comments during or after the beating plaintiff gathered that this vicious battery resulted from her assailant's belief (either real or imagined) that plaintiff had spoken to Mrs. Hargrove's son in what she construed to be a derogatory manner several days earlier when the fence was discussed. At no time did plaintiff strike Mrs. Hargrove.
The evidence fully supports the conclusion that Mrs. Hargrove was the aggressor. But as she relates the incident, she and her husband arrived at her son's home at the same time plaintiff parked her car in front of her own home. Her reason for approaching plaintiff was to "smooth things out," as she was aware of the differences between plaintiff and her son. When she reached Mrs. Boutte's car she introduced herself as the mother of plaintiff's neighbor. Plaintiff turned on her and slapped her in the faceand the fight was on. Her husband supported this account. However, even without benefit of observing him testify, we can readily see why his testimony was discounted: his answers were evasive and hostile.
Thus, with respect to Mrs. Hargrove we agree with the fixing of liability; however, we think the jury erred in relieving Mr. Hargrove from liability as a participant. Since the issue of liability turns on credibility, it would be inconsistent to accept the testimony of plaintiff's witnesses with respect to Mrs. Hargrove's role and disregard statements by the same people concerning her husband's actionsparticularly since the jury did not accept Mr. Hargrove's purported corroborative testimony that the plaintiff was the aggressor. These irreconcilable findings of the jury indicate to us that its conclusion that Mr. Hargrove did not participate in the altercation was not an evaluation of credibility but resulted from its confusion of the legal sense of the word "altercation" as employed in the pertinent interrogatory propounded to it.
Plaintiff and both independent witnesses saw Mr. Hargrove hold Mrs. Boutte's arm in the final minutes of the incident. At the point when he interjected himself in the fight, both witnesses were standing within a few feet of the struggle. While *760 it is true he did not hit plaintiff, he participated to the extent that he held her arms so she could not even ward off the blows. In our view this is legally sufficient to render him jointly liable with his wife.
We next consider quantum. Defense counsel challenges the jury award of $3,000 exemplary or punitive damages to plaintiff as unauthorized. Our jurisprudence fully supports this position. As this court has previously stated in Post v. Rodrigue, 205 So.2d 67, 70 (1967):
"The settled law of Louisiana is that vindictive, punitive or exemplary damages are not allowed in civil cases unless specifically provided for; in the absence of such a specific provision only compensatory damages may be recovered. [Citations omitted.]"
As to compensatory damages, we note the $6,000 award included both pain and suffering and special damages. Defendants argue the medical evidence fails to establish plaintiff suffered anything other than minor injuries attributable to the battery.
Two doctors, both affiliated with Ochsner Foundation Hospital, testified to plaintiff's injuries. Dr. Francis E. LeJeune, an otolaryngologist (ear, nose and throat specialist), examined plaintiff about five hours after the beating. He found swelling and contusions around the face. X rays showed a fracture of the tip of a nasal bone. Plaintiff complained of headaches and appeared to be nervous. Dr. LeJeune prescribed no medication and saw her only once. Because she complained of back pain, he referred her to the orthopedic department at Ochsner. Here she was treated by Dr. Thomas Duncan. In relating the history of her injury, she told Dr. Duncan she hit her back as she was pushed against the car. She complained of low back pain at the juncture of the spine and the pelvis. He diagnosed her condition as a strain of the low back muscles and ligaments. His initial examination was on April 18, 1968. She returned on May 7 and May 18. While the complaint of pain was made on the third visit, it is apparent from the orthopedist's testimony her condition had improved considerably.
At this same time, more than a month after the assault, she first complained of a pain at the base of her thumb. She returned on July 3 and the hand problem was diagnosed as a "trigger thumb," an irritation in the tendon mechanism of the thumb. An award for the thumb condition cannot be considered because the evidence does not establish her thumb was injured in the beating. Dr. Duncan said it was possible for the thumb to have been injured during the battery; however, the record fails to explain why more than one month passed before any symptom manifested itself. Thus, from an orthopedic standpoint, her compensable injury was a back strain that Dr. Duncan categorized as "moderate to minor."
The award for pain and suffering should also include compensation for indignity and humiliation. Our jurisprudence recognizes this as an element of compensable damages in assault and battery cases. Taylor v. City of Baton Rouge, 233 So.2d 325 (La.App. 1st Cir. 1970), and Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir. 1959).
In summary we find plaintiff has established her right to compensatory damages for pain and suffering for the following: (1) a fractured nasal bone; (2) bruises and contusions about the face; (3) a low back strain of four to six weeks' duration; and (4) humiliation and indignity suffered as a result of the beating.
Special damages proven to be directly attributable to the assault were medical expenses of $245.50 she paid to Ochsner Foundation Hospital and loss of wages. In addition, Mrs. Boutte claimed a dental bill of $5 for the extraction of a tooth. However, there is nothing in the record which proves with the legal certainty *761 required by law that this expense was incurred as a result of the beating.
The record contains no summary of plaintiff's total loss of wages, but it is established that she earned $1.95 per hour and that during the period of disability from April 12 through May 7 she missed 18 days of work. By our computation based upon an eight hour workday her lost wages amounted to $280.80. Thus the special damages total $526.30.
The jury awarded $9,000 for pain and suffering and special damages, including exemplary damages of $3,000. Appellant claims this is excessive and we agree. Utilizing the available jurisprudence[*] for the purpose of determining the reasonableness of the damages awarded, under the guideline of the Supreme Court expressed in the landmark case of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), we find the quantum to be excessive and to constitute a manifest abuse of discretion by the jury. We are not reducing the instant award in order to achieve consistency in the jurisprudence, which is prohibited by Gaspard, but because we are of the opinion that $2,500 for pain and suffering; $1,000 for embarrassment, humiliation and indignity; and $526.30 for special damages will adequately and more reasonably compensate the plaintiff.
For the reasons assigned the judgment appealed from is amended in part to reduce the award to plaintiff to $4,026.30; is reversed in part to cast defendant Lawrence E. Hargrove solidarily with his wife; and in all other respects, is affirmed. Costs of these proceedings are to be borne equally by opposing litigants.
Amended in part; reversed in part; and affirmed in part.
NOTES
[*] Lewis v. South Central Bell Telephone Company, 260 So.2d 764 (La.App. 4th Cir. 1972); Wright v. Green, 256 So.2d 780 (La.App. 2d Cir. 1972); Rydberg v. Wallace, 255 So.2d 368 (La.App. 1st Cir. 1971); Ebert v. Macaluso, 248 So.2d 355 (La.App. 4th Cir. 1971); Martin v. Farkas, 241 So.2d 272 (La.App. 1st Cir. 1970); Anderson v. State Farm Mutual Automobile Ins. Co., 238 So.2d 360 (La. App. 3d Cir. 1970); Davis v. Pena, 222 So.2d 595 (La.App. 4th Cir. 1969); Valenti v. Courtney, 206 So.2d 579 (La.App. 1st Cir. 1968).