BLANCHE, Judge.
On September 22, 1973, at Baton Rouge, Louisiana, defendant-appellee, William E. Bernard rear-ended a 1972 Lincoln Continental Mark IV leased by plaintiff-appellant, John R. Overturf. At the time, the automobile was being driven by Overturf’s wife, Anna Lee, also a plaintiff-appellant herein. John Overturf occupied the right, front seat and his daughter, • Dolores I. Overturf, the third plaintiff-appellant herein, was seated in the rear.
As a result of injuries sustained, all three occupants of the Overturf automobile sued Bernard and his liability insurer, defendant-appellee, Travelers Indemnity Company. At the trial it was stipulated by all parties that the defendants were liable but only to the $100,000/$300,000 limits of the insurance policy. It was also stipulated that the defendants were liable for and actually paid $718.56 for the repair of the plaintiffs’ automobile.
At the trial, which was limited to the question of quantum, each of the plaintiffs testified, along with defendants’ expert witness, Dr. Charles A. Beskin, a thoracic and vascular surgeon. The depositions of four other physicians were also introduced in evidence.
In a lengthy and well-considered opinion, the trial judge found the defendants solidarity liable to Anna Overturf for the sum of $500 and to Dolores Overturf for the sum of $750, with both judgments bearing legal interest thereon from date of judicial demand until paid.
John Overturf was also given judgment against the defendants, in solido, in the sum of $10,802.12, with legal interest from date of judicial demand until paid. Ten thousand dollars of the award was for his *96 “pain, suffering and disabilities,” $472.25 for medical bills, and $329.87 for replacement automobile rental.
In view of the fact that the trial judge itemized and separated John Overturf’s general damages from his special damages, we conclude that the awards in favor of Anna and Dolores Overturf were for their general damages only. No special damages were separated or itemized in their favor.
The expert witness fee for each of the five physicians was set at $75 and taxed as costs, to be paid by defendants.
The sole issue on this appeal is the quantum awarded to each of the plaintiffs. Each has appealed, seeking an increase in the trial court award, and the defendants answered the appeal of John Overturf, seeking a reduction of $5,000.
LSA-C.C. Art. 1934 (3) requires that in assessment of damages in cases of offenses and quasi offenses “much discretion must be left to the judge or jury.” In Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967), the Louisiana Supreme Court, in referring to Article 1934 (3), stated:
“* * * This law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the lower court.” (200 So.2d at 132)
I.
The facts reveal that Anna Over-turf, the driver of the automobile, was seen immediately after the accident at the Baton Rouge General Hospital Emergency Room, but, as was the case with all three plaintiffs, she was released without hospitalization. On her return home to Moss Point, Mississippi, she was requested by her physician, Dr. Frank Garbin, to enter the local hospital for observation. However, she declined, being of the opinion that since her daughter and her husband were admitted to the hospital, she would be needed to run errands and care for them.
The only medication she took was aspirin, and she suffered with headaches and a stiff neck for about two weeks. She saw her physician twice for these troubles. The trial judge described her injuries as “mild.” Thus, the award of $500 general damages “as compensation for her injuries” was not a clear abuse of the trial judge’s discretion and will not be disturbed.
It appears, however, that the trial judge inadvertently failed to award her special damages of $6 for consultation with Dr. Garbin. The judgment in her favor will, therefore, be amended by the addition of $6.
II.
Dolores Overturf bumped her head on the top of the automobile and suffered “terrible headaches.” Upon returning home to Moss Point, she was hospitalized three days for skull x-rays which showed negative. Her hospital bill was $251.65.
Her head and neck hurt for approximately two to three months after the accident. However, she has no permanent trouble from the injury, except for some stiffness when she takes long atuomobile trips.
This plaintiff cites several cases where somewhat similar injuries resulted in awards greater than $750. She, therefore, contends that an additional award of $1,000 would be appropriate in the instant case. However, the cases cited are not factually identical to the instant case. For instance, in Anderson v. State Farm Mutual Automobile Insurance Company, 238 So.2d 360 (La.App. 3rd Cir. 1970), the injured claimant was a pregnant woman, for which we feel a higher award was justified. The claimant in Jennings v. Allstate *97 Insurance Company, 241 So.2d 778 (La.App. 3rd Cir. 1970), suffered for over two years, whereas the plaintiff herein, according to her own testimony, suffered for only two to three months.
Despite the similarity to other cases, the award in each individual case must be determined on its own merits. Contrary to what plaintiff argues, uniformity is not the criterion by which to judge the adequacy or inadequacy of her recovery. In this regard we note the following language in Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974) :
“* * * The awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine, if the present award is greatly disproportionate to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case. In any event, an abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages.” (304 So.2d at 352)
In view of the evidence presented, we cannot say that the award of $750 general damages for injuries which the trial judge considered to be of a “minimal nature” was clearly an abuse of the trial judge’s discretion. However, the award failed to include special damages of $251.-65 for her hospital bill and a $10 medical bill of Dr. Garbin. The judgment in her favor will, therefore, be amended by the addition of $261.65.
III.
We also find no abuse of discretion in the award of $10,000 to John Overturf for his pain, suffering and disabilities. The following is a summary of the evidence concerning his injuries.
Plaintiff’s body evidently hit the dashboard upon impact by the Bernard vehicle. He was taken to the Baton Rouge General Hospital Emergency Room and given pain killers but required no hospitalization at that time. He returned home and saw Dr. Garbin, and on October 5, 1973, was hospitalized five days for stomach symptoms. During this stay, he was seen by Dr. M. F. Longnecker, Jr., an orthopedic surgeon, who diagnosed moderate degenerative changes in the lower cervical vertebrae, particularly at the C-5, C-6 and C-7 level. He felt that there was some impingement of the nerve root at the C-6 and C-7 level.
He found no real problem in the lower back, although plaintiff complained of soreness there. Dr. Longnecker recommended a myelogram to determine the seriousness of the damage. However, Over-turf, for reasons known only to him, refused and has continued to refuse to submit to that test.
On October 23, 1973, Overturf was again hospitalized, at which time it became obvious that his stomach problems were due to gallstones and a diaphragmatic hernia.
On November 2, 1973, Dr. C. D. Whig-ham operated to correct the hernia and gallstones. Because both were repaired in the same operation, a transverse incision across the entire abdomen was necessary, and this incision resulted in difficulties. On November 11, the incision burst, due to its length and complications from the patient’s obesity, and further surgery was required to obtain a secondary closure of the wound. Plaintiff thereafter recovered and was discharged on November 17.
On December 28, 1973, plaintiff again saw Dr. Longnecker regarding his neck and back problems. The myelogram was again recommended.
On August 6, 1974, a dehiscence, or second bursting of the abdominal incision occurred, requiring additional hospitalization and surgery.
All physicians who testified acknowledged that the gallstones were unrelated to *98 the accident. However, there was some disagreement as to whether the hernia was caused by or merely aggravated by the accident.
Dr. Garbin felt the hernia was caused by the accident, while the surgeon who operated, Dr. Whigham, felt that the accident, in conjunction with the plaintiff’s obesity, probably aggravated a preexisting hernia which had been repaired some years prior to this accident.
Dr. Beskin felt that the blow suffered in the somewhat minor automobile collision was totally insufficient to cause the hernia and was even reluctant to agree that such a blow would have aggravated the preexisting hernia.
The trial judge found:
“Considering the opinion of the three physicians who commented upon the relationship between the plaintiffs’ accident and developments necessitating surgery thereafter, the Court finds that the collision was not the initiating cause. Nevertheless, it would appear from the doctors’ assessment, the accident was an aggravating factor and probably contributed' to some of the complications related to the surgery and period of recovery.” (Written Reasons for Judgment, Record, p. 34)
Based upon the record, we cannot say that this conclusion by the trial judge was manifestly erroneous.
With regard to his back problems, the plaintiff was examined in February, 1975, by defendants’ expert neurosurgeon, Dr. Thomas B. Flynn. Dr. Flynn agreed with-Dr. Longnecker that the plaintiff suffered from a degenerative disc disease that pre-dated the accident but acknowledged that the accident aggravated same. He, too, considered that a myelogram should be done.
Dr. Flynn and Dr. Longnecker agreed that the plaintiff’s back problems were something he could learn to live with and that an operation was not imperative at the time of trial. They also both acknowledged that plaintiff would experience some pain occasionally as a result of the problem.
Altogether, considering both his back injuries and stomach problems, the plaintiff was absent from his work as an industrial engineer for approximately five months.
With the foregoing facts in mind, the trial judge made the following determination:
“Considering the expert testimony of the witnesses and the other evidence submitted in the case, the Court has formed the opinion that none of plaintiff’s medical problems following the accident originated with the trauma received in the collision, but nonetheless the collision aggravated these preexisting conditions, particularly as related to the cervical region. Under the circumstances it is very difficult to make an accurate assessment of the damages to be awarded to Mr. Overturf, but the Court believes that while the defendants ‘must take their victim as they find him’ as the courts have previously stated, neither should all of the plaintiff’s known prior ailments be visited upon them in terms of retribution. Consequently, the Court finds that a fair and adequate award for the pain, suffering and disabilities occasioned Mr. Overturf is $10,000.00.” (Written Reasons for Judgment, Record, p. 36)
Based on these observations, we conclude that the trial judge’s award for general damages included plaintiff’s initial injuries to his back, neck and hernia, as well as the complications resulting from the dehis-cence. It is further obvious that he concluded that because of the plaintiff’s gall bladder illness that the defendants should not be saddled with all the pain and suffering attendant with the complications as a result of the dehiscence and mitigated the damages to this extent. In our opinion, *99 such a finding was in accordance with the trial judge’s great discretion which we believe he properly exercised.
Although the trial judge found that the accident was an aggravating factor and probably contributed to some of the complications related to the plaintiff’s surgery and period of recovery, the only medical expenses awarded were for the initial expenses which resulted directly from the accident and those attributed to plaintiff’s back problems. We concur in those awards but believe he inadvertently failed to assess the medical expenses for the hernia and prorate the expenses occasioned by the dehiscence as he did in assessing general damages. Consequently, in addition to those initial and back-related expenses, the defendants are also liable for the plaintiff’s medical expenses to repair the aggravated hernia. Since the defendants are not liable for the plaintiff’s gall bladder problems, the issue before this Court is to decide which of the plaintiff’s medical expenses are attributable to the hernia and which to the gall bladder.
Those expenses attributable to the hernia, since it was accident aggravated, must be awarded to the plaintiff to fully indemnify him for his loss, LSA-C.C. Art. 1934(3). Even though it is not clear which expenses were for each problem, the plaintiff is, nevertheless, entitled to recovery, for as stated in Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971):
“Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. * * * ” (245 So.2d at 155)
In accordance with the cited authorities, we now make the following determinations.
Dr. Whigham deposed that his ordinary fee for this type of hernia operation was $450, and we, therefore, award that amount for the initial hernia operation.
The Singing River Hospital bill for the initial hospital stay for the repair of the hernia and the gall bladder was $2,368.90. Dr. Whigham testified that the patient would have been hospitalized the same length of time if the hernia operation had been performed singly, and, therefore, the room and board bill should have been the same despite the plaintiff’s having been operated on for both illnesses at once.
However, the determination of the portion of this bill attributable to the hernia is made difficult by the fact that the incision, which was of unusual proportions in order to accommodate performing both operations at the same time, burst and required additional surgery and additional hospital expenses. The physicians agreed that it burst because of the type of incision, complicated by the obesity of the patient. Discretion would seem to require some mitigation of the bill in defendants’ favor unless the defendants be given a free ride on the gall bladder operation as well as the complications which resulted therefrom.
We note, however, that the incision burst on the left side, which was the same side as the hernia. Additionally, the gall bladder operation, although not necessitated by the accident, was, in fact, complicated or aggravated by the fact that performance of an accident-related operation was required in combination therewith. In effect, we find that the gall bladder operation was complicated somewhat by the accident for which the defendants have been found liable. When all of the factors are considered, doing justice under the circumstances must be discretionary. In our discretion, we assess hospital expenses which plaintiff is entitled to recover at three-fourths of the hospital bill, or the sum of $1,776.68.
The plaintiff also incurred $680.25 in hospital expenses and a surgical bill of $250 for the second wound closure in August, 1974. In view of our prior discussion, an award of three-fourths of the hospital expenses, amounting to $510.19, and *100 three-fourths of the surgical bill, amounting to $187.50, is justified.
Plaintiff is also entitled to $44 for diagnostic x-rays on October 26, 1973, in conjunction with his hospital stay for the initial operation.
Plaintiff has also made a claim for lost wages. At the time of the accident, plaintiff was a self-employed safety engineer, and he was absent from work for approximately five months. His absence necessitated his hiring an engineer to substitute for him, since his business was a one-man operation.
To establish his loss, plaintiff introduced his federal income tax return for 1972, his first year in business, which showed income of $9,494.28.
His 1973 tax return evidenced $15,793.01 income from his business, although he was absent for the entire months of November and December due to his operation.
Although his 1974 tax return had not been filed at the time of trial, his profit and loss statement for that year, in which he missed approximately two months of work, showed $6,484.06 net income before taxes.
An award for loss of income is difficult in this case because of the fact that plaintiff had only operated his business for approximately two years prior to the accident, and, therefore, in our opinion we have no adequate pattern of income which would adequately reflect his loss.
Furthermore, all of the plaintiff’s lost time was not caused by the accident. Accordingly, we are of the opinion that an award of $7,500 would adequately compensate plaintiff for his income lost during his absence from work.
In recapitulation, we find that plaintiff is entitled to $450 for the initial hernia operation; $1,776.68 for the hospital expenses incurred due to the hernia and gall bladder operation; $510.19 for the second hospitalization; $187.50 for the surgical bill incurred for the second wound closure; $44 for x-ray expenses; and $7,500 for loss of income; or a total of $10,468.37.
For the above and foregoing reasons, the judgment of the trial court in favor of plaintiff, Anna Lee Overturf, in the sum of $500 is hereby amended by the addition of $6 thereto; the judgment in favor of plaintiff, Dolores I. Overturf, in the sum of $750 is hereby amended by the addition of $261.65 thereto; and the judgment in favor of plaintiff, John R. Overturf, in the sum of $10,802.12 is hereby amended by the addition of $10,468.37 thereto. In all other respects the judgment of the trial court is affirmed. All costs are to be borne by defendants-appellees.
AMENDED AND AS AMENDED, AFFIRMED.